**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-15-0000348**
**31-MAR-2016**
**08:21 AM**

NO. CAAP-15-0000348

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI‘I

GP, Petitioner-Appellant,
v.
LP; CHILD SUPPORT ENFORCEMENT AGENCY,
STATE OF HAWAI‘I, Respondents-Appellees

APPEAL FROM THE FAMILY COURT OF THE FIFTH CIRCUIT
(FC-M NO. 14-1-0026)

SUMMARY DISPOSITION ORDER
(By:  Nakamura, C.J., Foley and Ginoza, JJ.)

Petitioner-Appellant GP appeals from the "Order Granting [Respondent-Appellee LP's] Amended Motion to Dismiss for Lack of Jurisdiction" (**Order Granting Amended Motion to Dismiss**), entered on March 20, 2015 in the Family Court of the Fifth Circuit[1] (**family court**).

On appeal, GP contends the family court erred in:

(1) failing to assert jurisdiction because a significant connection existed between GP, the children, and Kaua‘i, and no other grounds existed for the family court to relinquish jurisdiction to the Ohio court;

(2) failing to consider that no emergency jurisdiction ever existed to permit Ohio to establish jurisdiction;

(3) failing to consider that the Ohio paternity proceeding was terminated;

---

[1] The Honorable Edmund D. Acoba presided.

(4) failing to take into account a violation by LP of the "Clean Hands" section of the 1997 Uniform Child Custody Jurisdiction and Enforcement Act (**UCCJEA**);

(5) finding that Ohio would be a more convenient forum for GP; and

(6) refusing to allow GP to testify regarding matters relevant to whether Ohio was an inconvenient forum.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we conclude GP's appeal is without merit.

GP challenges the family court's March 20, 2015 decision that "pursuant to [Hawaii Revised Statutes (**HRS**) § 583A-207(b)(8) (2006 Repl.)], Ohio is more familiar with the facts and issues of the pending custody litigation." The family court determined, "[c]onsidering all of the factors set forth in [HRS] §583A-207 [(2006 Repl.)], that Hawaii is an inconvenient forum and decline[d] to exercise jurisdiction of the custody case."

In 2002, the Hawai'i legislature adopted the UCCJEA, codified in HRS §§ 583A-101 et seq. The UCCJEA governs jurisdictional issues that arise in interstate child custody proceedings. NB v. GA, 133 Hawai'i 436, 440, 329 P.3d 341, 345 (App. 2014).

## I.  Inconvenient Forum

GP argues that the family court erred in finding that Hawai'i was an inconvenient forum under HRS § 583A-207[2] and

--------

[2] HRS § 583A-207 provides:

> **§583A-207 Inconvenient forum.** (a) A court of this State which has jurisdiction under this chapter to make a child-custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised upon the motion of a party, the court's own motion, or request of another court.
>
> (b) Before determining whether it is an inconvenient forum, a court of this State shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the
> (continued...)

contends that the Ohio court would be a more inconvenient forum because the family court "failed to take into account [GP's] extreme hardship in traveling to and lodging in Ohio, especially each time [LP] violated court orders there, and disregarded [GP's] offer and ability to fly and house [LP] and the children at his expense in Kauai." GP also argues that he "was not allowed to fully testify to the sicknesses of the children and to the continued operations of his business[.]"

---

[2](...continued)
parties to submit information and shall consider all relevant factors, including:

(1) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(2) The length of time the child has resided outside this State;

(3) The distance between the court in this State and the court in the state that would assume jurisdiction;

(4) The relative financial circumstances of the parties;

(5) Any agreement of the parties as to which state should assume jurisdiction;

(6) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

(7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence;

(8) The familiarity of the court of each state with the facts and issues in the pending litigation; and

(9) The physical and psychological health of the parties.

(c) If a court of this State determines that it is an inconvenient forum and that a court of another state is a more appropriate forum, it shall stay the proceedings upon condition that a child-custody proceeding be promptly commenced in another designated state and may impose any other condition the court considers just and proper.

(d) A court of this State may decline to exercise its jurisdiction under this chapter if a child-custody determination is incidental to an action for divorce or another proceeding, while still retaining jurisdiction over the divorce or other proceeding.

At the hearing before the family court, attorney Andrew Wick, who was representing LP in the pending Ohio case, testified that LP had seventeen witnesses to call before the Ohio court. None of the witnesses were located in Hawai'i. GP had twelve witnesses on his list for the Ohio custody proceeding, with three located in Hawai'i, two of whom were scheduled to appear telephonically.

LP testified that GP was physically and verbally abusive towards her and their children. LP also testified that her financial situation prevented her from flying to Hawai'i or flying her witnesses to Hawai'i if the custody proceedings were held in Hawai'i.

GP testified at the jurisdiction hearing that he never abused LP or the children. GP testified that he and LP agreed to dismiss the proceedings in Ohio while they attempted counseling in Iowa. He also testified that he bought LP plane tickets to Hawai'i and arranged for a house for LP and the children in Kaua'i for the custody proceedings in the family court.

As to his financial situation, GP estimated that his salary was $1,600 per month, but that he could raise his salary to pay for the custody proceedings. GP testified that he received financial assistance from family members for the custody proceedings and could request more assistance for future proceedings.

Regarding the inconvenience of litigating the custody dispute in Ohio, GP testified, "It is 5,000 miles away from where I live, and the kids, you know, were from Tennessee and then from here. There's a lot of unfairness." GP testified that it was difficult to respond to motions filed in Ohio, stating, "I'm trying to stay in a hotel and, you know, it's--just trying to stay in a hotel, trying to reach attorneys, constantly frustrating because I'm trying to see my children, and it's--it's expensive, and it's a long way. It's a 10,000 mile trip." GP testified that he was willing to purchase plane tickets for LP and the children to offset the cost of litigating in Hawai'i. GP testified that he believed that flying LP and the children to Hawai'i would be cheaper than flying himself to Ohio for custody

proceedings, taking into consideration lost income from his newly established business.

GP also testified about a number of instances in which LP attempted to block his visitation rights with the children. The family court noted that these attempts were relevant to the issue of custody and the evidence of these instances would be in Ohio.

GP's first argument that the family court "failed to take into account [GP's] extreme hardship in traveling to and lodging in Ohio" is unsupported by the record. The family court heard his testimony regarding the cost of traveling to, staying in hotels, and renting homes in Ohio. GP also testified to the family court about the impact traveling to Ohio would have on his business in Kaua'i. GP asserts on appeal that he was precluded from fully testifying about the "continued operations of his business," but the line of questioning at the hearing relating to his continued business operations were offered to establish GP's ties to Hawai'i. GP's testimony was explicitly not offered to establish his financial circumstances, one of the factors enumerated in HRS § 583-207(b).

GP's next argument that the family court "disregarded [GP's] offer and ability to fly and house [LP] and the children at his expense in Kauai" is likewise unsupported by the record. GP testified as to his willingness to fly LP and the children to Kaua'i and to provide them with temporary housing. GP provides no evidence to support his contention that the family court disregarded his testimony in determining that Hawai'i was an inconvenient forum.

GP's argument that he "was not allowed to fully testify to the sicknesses of the children" fails because GP has not demonstrated that the health of his children was relevant to the family court's determination that Hawai'i was an inconvenient forum. GP does not argue that his children's health is related to any of the factors enumerated in HRS § 583A-207(b) and does not make any argument that his children's health is otherwise relevant.

Based on the testimony presented to the family court relevant to the factors in HRS § 583A-207(b), we hold that the family court did not abuse its discretion in holding that Hawai'i was an inconvenient forum and Ohio was a more convenient forum for the custody dispute.[3]

## II. Unjustifiable Conduct

GP contends the family court should have considered LP's alleged violation of HRS § 583A-208 (2006 Repl.)[4] because LP "abduct[ed] the children to Ohio without the consent of [GP]" and "gained a significant advantage by filing motions in Ohio that enabled her to retain the children there due to the hardships and inequities faced by [GP] in litigating the matter in Ohio."

LP, who GP argues "engaged in unjustifiable conduct," is not "seeking to invoke [the family court's] jurisdiction . . . ." See HRS § 583A-208(a). HRS § 583A-208(a) therefore does not apply to the family court in this case, and GP's argument is without merit.

## III. Other Arguments

Given our conclusion that the family court did not abuse its discretion in ruling that Hawai'i was an inconvenient forum, we need not address the other arguments raised by GP,

---

[3] Because we affirm the family court's decision that Hawai'i was an inconvenient forum, we need not address the parties' disagreement over whether the family court had jurisdiction over this case under HRS § 583A-201.

[4] HRS § 583-208 provides, in pertinent part:

§583A-208 **Jurisdiction declined by reason of conduct.** (a) Except as otherwise provided in section 583A-204, if a court of this State has jurisdiction under this chapter because a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct, the court shall decline to exercise its jurisdiction unless:

(1) The parents and all persons acting as parents have acquiesced in the exercise of jurisdiction;

(2) A court of the state otherwise having jurisdiction under sections 583A-201 to 583A-203 determines that this State is a more appropriate forum under section 583A-207; or

(3) No court of any other state would have jurisdiction under the criteria specified in sections 583A-201 to 583A-203.

6

which are not relevant to the family court's inconvenient forum determination.

Therefore,

IT IS HEREBY ORDERED that the "Order Granting Respondent [LP's] Amended Motion to Dismiss for Lack of Jurisdiction" entered on March 20, 2015 in the Family Court of the Fifth Circuit is affirmed.

DATED:  Honolulu, Hawai'i, March 31, 2016.

On the briefs:

Rosa Flores
for Petitioner-Appellant.

Stacey Joroff
for Respondent-Appellee LP.

Chief Judge

Associate Judge

Associate Judge